UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| UNITED NATIONAL INSURANCE COMPANY, a Pennsylvania Insurance Company,<br><br>Plaintiff,<br><br>vs.<br><br>GUNDERSON, INC., an Oregon Corporation; DAVIS-FROST, INC., a Minnesota Corporation; AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY/AISLIC CLAIM SERVICES, INC., a New York Insurance Company; and THE TRAVELERS INDEMNITY COMPANY, successor in interest by merger to GULF INSURANCE COMPANY SERVICES, INC., a Connecticut Insurance Company,<br><br>Defendants. | Case No.: 08-CV-678 MJD/JJK<br><br><br><br><br><br><br><br>**MEMORANDUM OF DEFENDANTS THE TRAVELERS INDEMNITY COMPANY AND AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY IN SUPPORT OF MOTION TO DISMISS** |

_____

## I.   INTRODUCTION

Plaintiff United National Insurance Co. ("United National") has named American International Specialty Lines Insurance Company ("AISLIC") and The Travelers Indemnity Co. ("Travelers") as defendants in this lawsuit for declaratory judgment, even though United National has no valid claims against them or, in fact, any valid controversy for the Court to adjudicate concerning them.  Though United National has asked for a declaratory judgment of the rights and obligations of all the parties regarding a judgment (now on appeal) issued against its insured, Defendant Davis-Frost, Inc. ("Davis-Frost") in

1

an underlying products liability action, the presence of AISLIC and Travelers is not needed for the Court to render this relief.

General liability insurers owe two separate duties to their insureds: (1) to defend the insureds against any claim potentially falling within coverage; and (2) to indemnify the insureds for any covered loss under the policy. With respect to the defense obligation, Minnesota law obligates each insurer whose policy is potentially triggered by a covered claim to provide a complete defense to the insured. Davis-Frost, which joins in this motion, argues that Minnesota law provides no right of contribution for defense costs between insurers. Therefore, United National owes a complete defense to Davis-Frost, and there is no case or controversy between United National and Travelers and AISLIC as to that defense. Further, in the event a viable claim for contribution for defense costs might otherwise be present under the facts of this case, Davis-Frost and Gunderson have agreed to satisfy any obligation of AISLIC and Travelers to United National. Therefore, there is no reason that AISLIC and Travelers need to remain as parties to the case.

Nor is there any case or controversy between United National and Travelers and AISLIC as to the indemnity obligation. In Minnesota, general liability carriers are only liable to their insureds for covered losses (*e.g.*, bodily injury or property damage), as determined by the Court. Where one carrier has paid more than its fair share of the covered loss (*i.e.*, indemnified the insured for damages that should have been paid by another insurer), the insurer who paid the entire loss may pursue contribution from the other insurers whose obligations were satisfied. Here, the judgment entered against Davis-Frost in the underlying action by Gunderson, Inc. ("Gunderson") is on appeal, and

consequently, United National has paid nothing to date on that judgment. Davis-Frost and Gunderson have, however, settled their claims against Travelers and AISLIC. Under the settlement agreement, which is consistent with *Pierringer v. Hoger*, Davis-Frost and Gunderson have released Travelers and AISLIC and have agreed to satisfy any fraction, percentage or portion of those carriers' liability to Davis-Frost. As a result of the settlement, United National can never be asked to indemnify Davis-Frost or Gunderson for any more than United National's fair share of the any final judgment that may ultimately be entered after completion of the appeal and any remand in Gunderson's lawsuit against Davis-Frost.

Because United National has no potential contribution or other claims against AISLIC and Travelers, there is no actual conflict or controversy. In the absence of an actual conflict or controversy, this Court lacks subject matter jurisdiction over AISLIC and Travelers, and United National's claims against them fail to state a claim upon which relief may be granted. Therefore, AISLIC and Travelers should be dismissed from this lawsuit under Rules 12(b)(1) and 12(b)(6).

## II.   FACTUAL BACKGROUND

From July 29, 2000 through July 29, 2002, Davis-Frost was covered under commercial general liability ("CGL") and excess insurance policies issued by United National, under which United National agreed to defend Davis-Frost against any suit seeking damage because of bodily injury and property damage occurring during the policy period. (United National's Amended Complaint for Declaratory Judgment ("Amended Complaint") ¶¶ 1.1, 3.2.) United National's policies also obligate it to

3

indemnify Davis-Frost for property damage that occurred during the policy periods. (*Id.* ¶ 3.3.) After July 29, 2002, two other companies issued insurance policies to United National: Travelers issued CGL and excess policies that were effective from July 29, 2002 to July 29, 2003, and AISLIC issued CGL and excess policies that were effective from July 29, 2003 through July 29, 2005. (*Id.* ¶¶ 1.4-1.5.)

While the United National policies were in effect, Davis-Frost sold some water-based paint to Gunderson, and Gunderson applied the paint to rail cars it was manufacturing for two customers. (*Id.* ¶¶ 4.3.10-4.3.11.) Gunderson applied the paint to the cars between August 2000 and February 2001. (*Id.*) In May 2005, Gunderson sued Davis-Frost in Federal District Court in Oregon ("Underlying Action"), alleging that the paint Davis-Frost sold Gunderson for its rail cars was defective. (*Id.* ¶ 4.1.) The case went to trial, and the jury returned a verdict for Gunderson in the amount of $1.3 million, plus prejudgment interest and taxed costs. (*Id.* ¶ 4.20.)

All three insurance carriers were involved in the Underlying Action. Each provided a defense to Davis-Frost, subject to a reservation of their right to later deny coverage. (Counterclaim of Defendant Davis-Frost, Inc. ("Counterclaim") ¶ 10. ) United National is prosecuting the appeal from the judgment in the Underlying Action. (Amended Complaint ¶¶ 4.21-4.22.) Davis-Frost's Notice of Appeal from the judgment in the Underlying Action was filed on June 28, 2008.

After the trial in the Underlying Action, Gunderson, Davis-Frost, United National, AISLIC and Travelers participated in mediation but were unable to reach a global settlement. (Counterclaim ¶ 14.) Shortly after the mediation, Davis-Frost and Gunderson

entered into a Settlement Agreement with AISLIC and Travelers.  (*Id.*)[1]  United National is not a party to the Settlement Agreement.  Generally, under the settlement, Davis-Frost and Gunderson released any and all claims they might have against AISLIC and Travelers for indemnity for any final judgment or defense costs arising from the Underlying Action in exchange for payments by Travelers and AISLIC.  In addition, AISLIC and Travelers released any claims they may have against United National for indemnity or defense costs arising from the Underlying Action and to satisfy any responsibility of Travelers and AISLIC for defense or indemnification associated with the Underlying Action.  The Settlement Agreement is consistent with the principles of *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963) and *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978).  (*Id.*)

On March 17, 2008, United National filed this suit against Davis-Frost, Gunderson, AISLIC and Travelers.  United National alleges in its Amended Complaint that its policies do not provide coverage for any of Gunderson's claims against Davis-Frost in the Underlying Action. (Amended Complaint ¶ 5.1.)  In the prayer for relief in its Amended Complaint, United National requests declaratory judgments that: (1) Minnesota law governs the parties' rights and obligations, (2) United National's policies

---

[1] The Settlement Agreement is confidential; however, counsel for all defendants have signed a Stipulation for Protective Order, which would allow the Settlement Agreement to be provided to the Court and to United National, with only the settlement amount redacted.  As of the date of this Motion, United National's counsel has advised that he has not received authorization from his client to sign the Stipulation.  AISLIC and Travelers have therefore filed a Motion for Entry of a Protective Order contemporaneously with this Motion to Dismiss.  If the Court so requests, AISLIC and Travelers would also provide the Settlement Agreement to the Court for *in camera* review.

do not cover the verdict and judgment against Davis-Frost in the Underlying Action, and (3) United National is not bound by any settlement of the Underlying Action entered into without notice to United National; or, in the alternative, a declaratory judgment determining the rights and duties under the United National policies of all parties to the action. (*Id.* at 12.)

All parties have entered into and filed with the Court two Stipulations for extensions of time for AISLIC and Travelers to respond to the Amended Complaint. Through this motion, AISLIC and Travelers seek dismissal with prejudice, under F.R.C.P 12(b)(1) and 12(b)(6) of all of United National's claims against them for declaratory relief, as set forth in the Amended Complaint.

### III.   ARGUMENT

**A.   United National's Claims Against AISLIC and Travelers Must Be Dismissed Under Rules 12(b)(1) and 12(b)(6).**

*1.   Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction*

A case will be dismissed under Federal Rule of Civil Procedure 12(b)(1) if the court lacks subject matter jurisdiction over the claims. To meet the jurisdictional requirements of the Declaratory Judgment Act, a case must present an "actual controversy" that is ripe for decision. *See* 28 U.S.C. § 2201; *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972); *Medmarc Cas. Ins. Co. v. Angeion Corp.*, 419 F. Supp. 2d 1112, 1122 (D. Minn. 2006). An "actual controversy" exists if the facts alleged show that there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." *Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1074 (D. Minn. 2001) (internal citations omitted).  Similarly, under Minnesota Statute § 555.11, "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration…"  If a person does not have a claim or interest to be affected by the declaration, the person is not a proper party to a declaratory judgment action, and that person should be dismissed from the action.

   2. *Standard for Motion to Dismiss for Failure to State a Claim*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "[D]ismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).  When a court considers a motion to dismiss, the facts alleged in the complaint must be taken as true.  *Shqeirat v. U.S. Airways, Group Inc.*, 515 F.Supp.2d 984, 991 (D. Minn. 2007).  Then, if the allegations on the face of the complaint demonstrate the existence of some insuperable bar to relief, dismissal is appropriate. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997).  An action for a declaratory judgment is subject to dismissal under Rule 12(b)(6) if it fails to allege an "actual controversy" as required by the Declaratory Judgment Act and where "it appears beyond doubt that the defendant can prove no set of facts in support of a claim entitling him or her to relief."  *Wells v. Farmers Alliance Mut. Ins. Co.*, No. 2:07CV00036, 2008 U.S. Dist. LEXIS 24628, at *3 (E.D. Mo. Mar. 27, 2008) (citing *Breedlove v. Earthgrains*

*Baking*, 140 F.3d 797, 799 (8th Cir. 1998)).

In this case, Travelers and AISLIC meet the standards for dismissal under both Rule 12(b)(1) and Rule 12(b)(6).

**B.      There Is No Actual Controversy Between United National and AISLIC or Travelers in Regard to the Allocation of Liability for the Judgment in the Underlying Action.**

United National has asked this Court for a declaratory judgment stating that no coverage exists under its CGL policies for the judgment against Davis-Frost in the Underlying Action or, in the alternative, a declaratory judgment determining the three insurers' allocated responsibility for the judgment in the Underlying Action. (Amended Complaint, Prayer for Relief ¶¶ 2, 3.) As is discussed below, there are only three possible outcomes for this request, and United National would not have a valid claim for contribution against AISLIC or Travelers under any of them. Nor could AISLIC or Travelers have a claim against United National because by the express terms of the Settlement Agreement they have waived any claim for contribution against United National. Therefore, there is no actual controversy between United National and the other insurers and United National has failed to state a claim against them.

   *1.    United National Has No Potential Claim Against AISLIC and Travelers for Contribution for Payment of Any Final Judgment in the Underlying Action.*

The first possibility is that the court would grant United National's request and issue a declaratory judgment stating that United National's policies do not provide coverage for the judgment against Davis-Frost. If this were the outcome of the suit,

United National would pay nothing toward any potential final judgment in the Underlying Action and would have no claim for contribution against AISLIC or Travelers.

The second possibility is that the Court could issue a declaratory judgment stating that United National's policies require it to pay the entire judgment against Davis-Frost. This would be the outcome if the Court determines that the damages at issue in the Underlying Action arose from a "discrete originating event" that occurred during United National's policy periods (July 29, 2000-July 29, 2002), making allocation between insurers inappropriate.[2] *See Kootenia Homes, Inc. v. Federated Mut. Ins. Co.*, No. A05-278, 2006 WL 224162, at *6 (Minn. Ct. App. April 18, 2006). In such cases, the damages are all allocated to the policy year in which the originating event occurred, even if the damage continues during successive policy periods. *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 318 (Minn. 1995) (holding insurer on the risk at the time of a

---

[2] Minnesota courts are reluctant to allocate loss among consecutive insurers; as explained by the Minnesota Supreme Court, "[A]llocation is meant to be the exception and not the rule." *In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 421 (Minn. 2003). If an injury can be attributed to a discrete and identifiable occurrence, such as faulty installation of stucco that led to moisture intrusion in homes (*Kootenia Homes*, 2006 WL 224162, at *6) or the implantation of a silicone breast implant that eventually leaked and caused auto-immune disease (*In re Silicone,* 667 N.W.2d at 422), under the actual-injury trigger rule, the court will assign all of the loss to the insurer whose policy was active at the time of the occurrence. In this case, Davis-Frost's paint was applied to the rail cars at issue in the Underlying Action between August 2000 and February 2001 (Amended Complaint ¶¶ 4.3.10-4.3.11), during the period when United National's policies were in effect. (*Id.* ¶ 1.1). Therefore, if the application of Davis-Frost's allegedly defective paint to the Gunderson rail cars is found to be the "discrete and identifiable event" from which the injury in the Underlying Action arises, United National would be solely liable for the full amount of damages awarded in the Underlying Action.

significant chemical spill liable for all damage that resulted from the spill, including migration of the chemical to previously uncontaminated groundwater during successive policy periods); *Kootenia Homes*, 2006 WL 224162, at *6 (assigning all property damage to the policy in effect when faulty stucco was installed, even though water intrusion damage occurred during successive policies). If this were the outcome, again, United National obviously would not have a claim for contribution against AISLIC and Travelers because United National would be obligated to pay the entire judgment.

The final possibility is that the Court could issue a declaratory judgment stating that payment of the judgment must be allocated between multiple insurers, with each paying a portion of the judgment. This would be the outcome if the Court determined that the damages at issue in the Underlying Action were caused by a continuous and indivisible injury that triggered coverage under multiple, successive insurers' policies. *See In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 420 (Minn. 2003); *Domtar, Inc. v. Niagara Fire Ins. Co.,* 563 N.W.2d 724, 732 (Minn. 1997). In such cases, when policy periods do not overlap, Minnesota law holds insurers consecutively, not concurrently liable. *Wooddale Builders, Inc. v. Maryland Casualty Co.*, 722 N.W.2d 283, 295 (Minn. 2006). Loss is allocated among the consecutively-liable insurers *pro rata* by time on the risk; that is, each insurer will pay a percentage of the total judgment based on the percentage of the total period of liability insured by each carrier while the continuous damage was occurring. *See Domtar*, 563 N.W.2d at 732; *Wooddale Builders*, 722 N.W.2d at 299.

If this were the outcome of this case, United National still would have no claim for

contribution against AISLIC and Travelers; United National would be required to pay its determined *pro rata* share of the judgment and no more. United National has not yet paid anything toward the judgment, so there is no potential that the declaratory judgment might identify an allocated share that is less than what United National has already paid.

In short, there is simply no possibility that United National will have a contribution claim against either AISLIC or Travelers, whatever the outcome of the coverage claims between United National and Davis-Frost and Gunderson.

> 2. *AISLIC and Travelers Have No Potential Claim Against United National for Contribution for Payment of Any Final Judgment in the Underlying Action.*

Nor will United National be subject to potential future claims for contribution from AISLIC or Travelers, regardless of whether AISLIC and Travelers are allocated none, all, or a portion of the responsibility for the judgment in the Underlying Action. The Settlement Agreement between Davis-Frost, Gunderson, AISLIC and Travelers settled all claims among those parties, thereby fixing AISLIC's and Travelers' liabilities for any final judgment in the Underlying Action. Consequently, there is no controversy regarding AISLIC's and Travelers' liability or rights to indemnification that remains in question for resolution in this lawsuit. *See Medmarc Casualty Insurance Co. v. Angeion Corp.*, 419 F.Supp.2d 1112, 1123 (D. Minn. 2006) (dismissing, for lack of subject-matter jurisdiction, declaratory judgment claims between an insurer and a defendant who demanded indemnification from the insurer or its insured because the defendant and insured had settled the underlying claim, leaving the defendant without an interest in the lawsuit between the insurer and insured).

In the Settlement Agreement, in exchange for confidential settlement payments, Davis-Frost and Gunderson released AISLIC and Travelers from any potential obligations that AISLIC and Travelers might have to indemnify Davis-Frost for any final judgment in the Underlying Action. Consistent with *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963) and *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978), Davis-Frost and Gunderson also agreed to waive and deem satisfied any claim for indemnity payments and defense costs for which AISLIC and/or Travelers would be obligated to pay or contribute arising from the claims against Davis-Frost in the Underlying Action. Thus, the claims between Davis-Frost and Gunderson and AISLIC and Travelers are no longer in controversy and do not require resolution in this suit.

The Settlement Agreement also includes a release by AISLIC and Travelers of any claims they may have against United National for indemnity payments arising from the Underlying Action. Based on this provision, there is no active controversy about whether AISLIC or Travelers has any claim for contribution against United National.[3] In addition, because the Settlement Agreement waives any claims AISLIC and Travelers may have had against United National for contribution or indemnity, AISLIC and Travelers no longer have any interest in this action. Therefore, AISLIC and Travelers

---

[3] United National requests a declaratory judgment stating that United National is not bound by "any settlement of the lawsuit entered into without notice to United National and the opportunity to participate and, further, that such settlement does not eliminate United National's contribution rights against Travelers and AISLIC." (Amended Complaint, Prayer for Relief ¶ 2.) However, the Settlement Agreement does not effect a "settlement of the lawsuit" between Davis-Frost and Gunderson, as evidenced by the ongoing appeal by Davis-Frost of the judgment in that action. United National's requested declaratory judgment, even if issued, would not change the fact that there is no controversy between United National and AISLIC or Travelers.

qualify as parties "who have or claim any interest which would be affected by the declaration," as required by the Minnesota Declaratory Judgments Act and are not proper parties to this action. Minn. Stat. § 555.11.

Because United National and AISLIC or Travelers cannot bring any claims against each other regarding the allocation of liability for the judgment in the Underlying Action, there is no actual controversy for the court to adjudicate on this point, and dismissal of AISLIC and Travelers is warranted.

C.   **There Is No Actual Controversy Between United National and AISLIC or Travelers With Respect to Defense Costs for the Underlying Action.**

United National also cannot justify the inclusion of AISLIC and Travelers as parties in this lawsuit by arguing that it may have a claim against them for contribution to the cost of defending Davis-Frost in the Underlying Action. Under the circumstances of this case, United National has no claim for contribution to defense costs under Minnesota law. Therefore, there is no actual controversy between United National and the other insurers on this point, and United National has failed to state a claim against them.

First, as is discussed below, assuming any right of contribution exists between insurers under Minnesota law (see below), under the Settlement Agreement, Davis-Frost and Gunderson agreed to satisfy any obligation of AISLIC and Travelers to United National for future defense costs incurred in defense of the Underlying Action. Therefore, there is no need for AISLIC and Travelers to remain parties to this action. In addition, because AISLIC and Travelers waived any claims for defense costs they incurred, they no longer have an interest in the reimbursement of defense fees. Without

this interest, again, AISLIC and Travelers fail to qualify as parties "who have or claim any interest" under the Minnesota Declaratory Judgments Act, and therefore are not proper parties to this action.

Second, Davis-Frost, which joins in and supports the motion by AISLIC and Travelers for dismissal of United National's claims against them, notes that under Minnesota law, each insurer owes the insured an independent obligation to provide a defense to all claims that may fall within the scope of coverage under its policy. *Nordby v. Atlantic Mut. Ins. Co.*, 329 N.W.2d 820, 824 (Minn. 1983). Davis-Frost also notes that absent a loan receipt agreement, under long-standing Minnesota precedent, an insurer has no right of action against another insurer to recover the cost of defending the insured, since no contractual obligation exists between the two insurers. *Jostens, Inc. v. Mission Insurance Co.*, 387 N.W.2d 161 (Minn. 1986) (allowing contribution claim between insurers only where there is a loan receipt agreement); *Nordby*, 329 N.W.2d at 824 (denying a primary insurer reimbursement of costs from a co-insurer); *St. Paul Sch. Dist. No. 625 v. Columbia Transit Corp.*, 321 N.W.2d 41, 48 (Minn. 1982); *Farm Bureau Mut. Ins. Co. v. North Star Mutual Ins. Co.*, No. A05-851, 2005 WL 3112014, at *2 (Minn. Ct. App. Nov. 22, 2005) (denying an insurer reimbursement of defense costs from another insurer that the court determined had a duty to defend the insured, which it had not fulfilled). Finally, Davis-Frost notes that the insurer that paid the defense costs has no cause to complain if it contributes more than another insurer, because it is only doing what it agreed to do and was paid by the insured to do. *Andrew L. Youngquist, Inc. v. Cincinnati Ins. Co.*, 625 N.W.2d 178, 186 (Minn. Ct. App. 2001).

In its policies, United National agreed to provide Davis-Frost with a defense against any suit seeking damages for property damage or bodily injury caused by an occurrence during the policy period. (Amended Complaint ¶ 3.2.) United National defended Davis-Frost's in the Underlying Action under a reservation of rights and has continued the defense through bringing an appeal from the judgment in the Underlying Action. (*Id.* ¶¶ 4.21-4.22.) Under the above-cited Minnesota precedent, United National has no claim against AISLIC or Travelers for any sums it has expended or will expend on Davis-Frost's defense. United National provided the defense based on its contractual obligation to Davis-Frost, and it has no loan agreement with Davis-Frost or contract with AISLIC or Travelers that provides it with a right to recover sums expended for defense. Therefore, there is no controversy regarding the possibility of a claim between United National and AISLIC or Travelers for payment of defense costs. *See Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1074 (D. Minn. 2000) (dismissing for lack of a justiciable controversy claims between an insured and a reinsurer because the insured had no contractual relationship with the reinsurer and could therefore have no claims against the reinsurer).

Therefore, there is no actual controversy for the Court to adjudicate on this point and dismissal of AISLIC and Travelers is warranted.

**D.     Minnesota's Policy of Encouraging Settlement Requires That AISLIC and Travelers Be Dismissed From this Lawsuit.**

Finally, dismissal of AISLIC and Travelers is consistent with Minnesota's policy of encouraging settlement. "Traditionally, the courts in Minnesota have favored

settlement of disputes without litigation." *Boatel Industries, Inc. v. Wollard*, No. 5-86-261, 1987 U.S. Dist. LEXIS 16751, *12-13 (D. Minn. Mar. 16, 1987) (refusing to use a contract that was ancillary to settlement negotiations to establish jurisdiction, because such a use would contradict Minnesota's policy of encouraging settlement); *see Transclean Corp. v. Motorvac Techs.*, No. 01-287, 2002 U.S. Dist. LEXIS 19312, at *25 (D. Minn. Sept. 30, 2002) (determining the court should apply Minnesota law, not California law, because California law "would directly undermine Minnesota's policy of encouraging settlements"); *Bergstrom v. Sears, Roebuck & Co.*, 532 F. Supp. 923, 932 (D. Minn. 1982) (referencing the "salutary principle that voluntary settlements of civil controversies are highly favored by courts").  Here, AISLIC and Travelers should be dismissed from this lawsuit because they have resolved all the potential controversies between themselves and their insured and their insured's potential creditor without litigation.  Forcing them to remain in this lawsuit would not only be contrary to law as there is no active controversy, but would undermine the value of settlement agreements like theirs, something Minnesota courts are loath to do.

## IV.   CONCLUSION

There is no active controversy of any kind between United National and Travelers or AISLIC regarding potential payment of any future final judgment from the Underlying Action or defense costs incurred or to be incurred in that lawsuit.  Thus, the Court has no subject matter jurisdiction over AISLIC and Travelers, and United National has failed to state any claim against these defendants.  For the foregoing reasons, AISLIC and

Travelers therefore respectfully request that the Court dismiss United National's claims against them in this action, with prejudice and on the merits, under Rule 12(b)(1) and Rule 12(b)(6).

Dated: July 7, 2008

>GRAY, PLANT, MOOTY,
>  MOOTY & BENNETT, P.A.
>
>By   s/ Rick E. Kubler
>     Rick E. Kubler, #190007
>     Joy R. Anderson # 0388217
>500 IDS Center
>80 South Eighth Street
>Minneapolis, Minnesota 55402
>Telephone:  (612) 632-3000
>
>**ATTORNEYS FOR DEFENDANTS DAVIS-FROST, INC., THE TRAVELERS INDEMNITY CO. AND AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY**

GP:2397895 v9