## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED NATIONAL INSURANCE COMPANY, a Pennsylvania Insurance Company,<br><br>Plaintiff,<br><br>vs.<br><br>GUNDERSON, INC., an Oregon Corporation; DAVIS-FROST, INC., a Minnesota Corporation,<br><br>Defendants. | Court File No. 0:08-cv-678 (MJD/JJK)<br><br><br>**GUNDERSON'S MEMORANDUM OF LAW IN OPPOSITION TO UNITED NATIONAL'S SECOND MOTION FOR SUMMARY JUDGMENT** |

## I.  INTRODUCTION

This second Motion for Summary Judgment is a meritless attempt by United National Insurance Company ("United National" or "UNIC") to escape its insurance-coverage responsibilities based on a contorted reading of the *Miller-Shugart* Settlement Agreement (the "Settlement Agreement") entered into between Gunderson, Inc. ("Gunderson") and Davis-Frost, Inc. ("Davis-Frost").  The Settlement Agreement does not release the Judgment.  Consistent with well-established Minnesota law, the Settlement Agreement assigns Davis-Frost's insurance claim to Gunderson, releases Davis-Frost from personal liability, and clearly provides that Gunderson may satisfy the outstanding portion of the Judgment only from any insurance coverage due to Davis-Frost by United National.  A wealth of Minnesota, *Miller-Shugart* decisions describe the *Miller-Shugart* settlement procedure precisely as it was effectuated by Gunderson and

Davis-Frost here.  In fact, many Minnesota decisions call such settlements *Miller-Shugart*

releases.  United National's Motion for Summary Judgment is without merit and should

be denied.

## II.  ADDITIONAL DOCUMENTS WHICH COMPRISE THE RECORD

    A.    2/22/10 Affidavit of Bryan R. Freeman ("Freeman Aff."), with the

following Exhibits:

        1.    Ex. A: December 10, 2009, *Miller-Shugart* Settlement Agreement;

        2.    Ex. B: 10/15/09 Correspondence from Rolf E. Sonnesyn to Rick E. Kubler;

        3.    Ex. C: 10/16/09 Correspondence from Michael R. Seidl to Rolf E. Sonnesyn;

        4.    Ex. D: 12/3/09 Notice Letter from Rick E. Kubler to Rolf E. Sonnesyn;

        5.    Ex. E: 1/26/10 Letter from Rolf E. Sonnesyn to Michael R. Seidl;

        6.    Ex. F: Excerpts from the 2/5/10 Deposition of United National's Duane Parker.

### III.  STATEMENT OF ISSUE

    A.    Does the Settlement Agreement's release of Davis-Frost from personal liability, with the express provision that the Judgment against Davis-Frost remains in full force and effect to be satisfied by any insurance proceeds due to Davis-Frost from United National, relieve United National of its insurance-coverage responsibilities for the Judgment?

## IV.  GUNDERSON'S STATEMENT OF UNDISPUTED FACTS[1]

A.      Davis-Frost assigned to Gunderson its rights, claims, and/or causes of action against United National relating to United National's refusal to indemnify Davis-Frost for the Judgment.  (Freeman Aff., Ex. A at ¶ 6.)

B.      Pursuant to the express terms of paragraphs 12, 6, 8, and 10 of the Settlement Agreement, the Judgment was not released, was not satisfied, and was not made void.  (Id. at ¶¶ 12, 6, 8, 10.)

C.      The Judgment against Davis-Frost remains in full force and effect.  (Id.)

D.      Gunderson released Davis-Frost from personal liability related to the underlying Oregon action.  (Id. at ¶¶ 15, 12, 6, 8, 10.)

E.      The Judgment against Davis-Frost remains collectible directly from United National insofar as United National owes Davis-Frost insurance proceeds under the United National insurance policies.  (Id. at ¶¶ 12, 6, 8, 10.)

F.      All of the terms of the Settlement Agreement are undisputed, and are incorporated here in full, by reference.  (Id., Ex. A.)

## V.  BACKGROUND

This dispute between Gunderson, Davis-Frost, and United National, one of Davis-Frost's insurers, arises out of damage to railcars manufactured and sold by Gunderson between August 2000 and February 2001.  (Summ. J. Order, Dkt No. 99, at 2.)  Those

_____

[1] Gunderson's position is that the Settlement Agreement is unambiguous and United National's Motion fails as a matter of law.  Alternatively, if the Court concludes that the Settlement Agreement is ambiguous, Gunderson's position is that the contracting parties'

railcars were painted by Gunderson with Davis-Frost paint, and after being placed into service around the country, the paint started to blister, bubble, and crack, exposing the metal substrate of the railcars to conditions causing rust and corrosion. (*Id.* at 2-3.) Gunderson eventually settled the claims of its customers for $1.3 million and sued Davis-Frost in Federal District Court in Oregon (the "Underlying Action"). (*Id.* at 3-4.) The jury returned a $1.3 million verdict in favor of Gunderson, and Gunderson obtained a $1,321,274.09 Judgment against Davis-Frost ("the Judgment"). (*Id.*)

In the course of litigation and following entry of the Judgment, Davis-Frost disclosed its weak financial condition to Gunderson. (<u>See</u> Freeman Aff., Ex. A at 3.) Davis-Frost advised Gunderson that if it was forced to pay the full amount of the Judgment it would likely be forced to seek bankruptcy protection. (<u>Id.</u>) As a result, Davis-Frost's primary hope for satisfying the entire Judgment was, and always has been, the commercial general liability insurance that it had purchased to protect itself.

During the relevant time periods, Davis-Frost was insured by three different liability insurers. For the two annual policy periods between July 29, 2000 and July 29, 2002, United National insured Davis-Frost under commercial general liability and commercial umbrella policies. (*Id.* at 5.) Travelers Indemnity Company ("Travelers") insured Davis-Frost for the policy period between July 29, 2002, and July 29, 2003, and American International Specialty Lines Insurance Company ("AISLIC") insured Davis-Frost between July 29, 2003 and July 29, 2005.

---

intent would, at a minimum, be a disputed question of fact, precluding the entry of summary judgment for United National.

Less than a month after the entry of Judgment against Davis-Frost, in March of 2008, United National sued Davis-Frost, as well as the other insurers, completely denying coverage and seeking a declaration that United National's policies do not cover any part of the Judgment. (UNIC's Second Am. Compl., Dkt. No. 48, at pg. 12, ¶¶ 1-4.)  United National also sued Gunderson, even though Gunderson was not an insured under United National's policies, alleging that "[a] controversy exists between United National and the other parties to this action as to United National's coverage and liability for the judgment entered against Davis-Frost in the underlying case."  (UNIC's Compl., Dkt. No. 1, at pg. 12, ¶ 5.12.)  It was United National that brought Gunderson into this insurance-coverage litigation, expressly recognizing that as a result of Davis-Frost's liability to Gunderson and its financial position, the real dispute was between United National and Gunderson.

Eventually, Travelers and AIG were dismissed from this action. (Dismissal Order, Dkt. No. 33.)  But United National persisted in its complete denial of coverage and eventually brought a motion for summary judgment, seeking judgment as a matter of law based on several coverage defenses, including its claim that the damage to the railcars—in the form of rust, corrosion, and blistering decals—did not begin during its two policy periods.  (See UNIC's First Summ. J. Br. at 2, Dkt. 66.)  The Court denied that motion, concluding that genuine issues of material fact precluded summary judgment.  (Summ. J. Order, Dkt. No. 99.)

Following the Court's Summary Judgment ruling, on September 4, 2009, the parties held a global Settlement Conference to attempt to resolve this dispute short of trial.  (Order, Dkt. No. 93.)  That global Settlement Conference was unsuccessful.

Gunderson and Davis-Frost, however, began to discuss potential settlement of their dispute under the rubric of Minnesota's *Miller-Shugart* line of cases.

First, Gunderson offered to settle the matter with Davis-Frost, and Davis-Frost sought United National's participation in a global settlement. (Freeman Aff., Ex. A at 3.) United National, however, refused Gunderson's settlement demand. (Id.) Davis-Frost then notified United National of its intent to enter into a *Miller-Shugart* settlement with Gunderson, providing a copy of that *Miller-Shugart* Settlement Agreement to United National. (Id., Ex. D.) United National did not comment and declined further participation in settlement negotiations. Left facing a possibility that it would be required to satisfy the full, outstanding amount of the Judgment, and the very real chance of bankruptcy as a result, (id. at 3), Davis-Frost entered into the *Miller-Shugart* Settlement Agreement with Gunderson, gaining the promise from Gunderson that beyond $175,000 in settlement payments, Gunderson would only seek to satisfy the outstanding portion of the Judgment against Davis-Frost from any insurance proceeds due to Davis-Frost from United National. (Id. at 4.) Consistent with *Miller-Shugart*, Gunderson released Davis-Frost from personal liability. (Id. at ¶ 15.) In addition to promised settlement payments in the amount of $175,000, Gunderson received an assignment of Davis-Frost's insurance rights and claims against United National. (Id.)

As a result of Gunderson's release of Davis-Frost from personal liability, as set forth in the Settlement Agreement, United National now moves for summary judgment, claiming that as a result of the release provision, it no longer has any coverage responsibility under its insurance policies.

# VI. <u>ARGUMENT</u>

**A.    Standards Of Review:**

     1.    <u>Summary Judgment Standard</u>:

Under Federal Rule of Civil Procedure 56(c), summary judgment may only be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Summary judgment is considered an "extreme remedy that should not be granted unless the moving party has established a right to judgment with such clarity as to leave no room for doubt."   <u>Avenson v. Zegart</u>, 577 F.Supp. 958, 961 (D. Minn. 1984).  United National cannot meet this standard.

     2.    <u>Minnesota Rules Of Contract Interpretation Require That The Settlement Agreement Be Construed As A Whole, So As To Give Effect To All Of The Agreement's Provisions</u>.

United National's Summary Judgment Motion is based on the terms of the Settlement Agreement, and thus its terms must be applied and interpreted according to Minnesota rules of contract interpretation.  A settlement agreement is a contract like any other.  <u>In re Welfare of MRH</u>, 716 N.W.2d 349, 352 (Minn. Ct. App. 2006); <u>Beach v. Anderson</u>, 417 N.W.2d 709, 711-12 (Minn. Ct. App. 1988).  In Minnesota, "[t]he cardinal purpose of construing a contract is to give effect to the *intention of the parties* as expressed in the language they used in drafting the *whole contract*." <u>Art Goebel, Inc. v. N. Suburban Agencies, Inc.</u>, 567 N.W.2d 511, 515 (Minn. 1997) (emphasis added); <u>Employers Mut. Cas. Co. v. A.C.C.T., Inc.</u>, 580 N.W.2d 490, 493 (Minn. 1998) (reciting the same rule).

In furtherance of this cardinal purpose, it is an accepted rule in Minnesota that Courts "give effect to all of a contract's terms."  Metro. Airports Com'n v. Noble, 763 N.W.2d 639, 645 (Minn. 2009).  A reviewing court must "construe a contract as a whole so as to harmonize all provisions, if possible, and to avoid a construction that would render one or more provisions meaningless." Stiglich Constr., Inc. v. Larson, 621 N.W.2d 801, 803 (Minn. Ct. App. 2001) (citation omitted).  The process of interpreting the contracting parties' intent is not determined "by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which words and phrases are given a meaning in accordance with the obvious purpose of the . . . contract as a whole."  Davis by Davis v. Outboard Marine Corp., 415 N.W.2d 719, 723 (Minn. Ct. App. 1987), *review denied* (Minn. Jan. 28, 1988).  And Minnesota courts have a longstanding policy of construing contracts in a manner that avoids unjust results. RAM Mut. Ins. Co. v. Meyer, 768 N.W.2d 399, 406 (Minn. Ct. App. 2009).   As demonstrated below, United National's Motion cannot be reconciled with these basic rules of contract interpretation.

3.    The *Miller-Shugart* Settlement Process Is Well-Established In Minnesota.

A *Miller-Shugart* Settlement Agreement is a unique type of insurance-coverage settlement with its own developed body of Minnesota law.  Under Minnesota's *Miller-Shugart* doctrine, "[w]hen an insurer has denied that its policy affords any coverage for a claim brought against its [policyholder], the [policyholder] may agree to have judgment entered against it on condition the judgment is collectible only from available insurance."

Indep. Sch. Dist. No. 197 v. Accident & Cas. Ins. of Winterthur, 525 N.W.2d 600, 606 (Minn. Ct. App. 1995).  Minnesota courts have approved the *Miller-Shugart* settlement process, whereby the "[policyholder] stipulates to a money judgment in favor of a plaintiff, the plaintiff releases the insured from personal liability, and the plaintiff agrees to seek coverage from the insurer."  Burbach v. Armstrong Rigging & Erecting, Inc., 560 N.W.2d 107, 109 (Minn. App. 1997).[2]

The logic of the *Miller-Shugart* doctrine is straightforward.  A *Miller-Shugart* settlement permits the policyholder to protect itself and act in its best interests when facing the potential of no insurance coverage for its liability, and it allows the underlying plaintiff to proceed directly against the insurer.  As the Minnesota Supreme Court observed in Miller v. Shugart:

> [The insureds] . . . have a right to protect themselves against plaintiff's claim. . . .  If, as here, the insureds are offered a settlement that effectively relieves them of any personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in their best interest to accept the offer.  Nor, do we think, can the insurer who is disputing coverage compel the insureds to forego a settlement which is in their best interests.

316 N.W.2d 729, 733-34 (Minn. 1982).

Here, a *Miller-Shugart* settlement agreement made perfect sense.  Davis-Frost, the policyholder, faced the risk that it would be required to pay the balance of the Judgment,

---

[2] The normal concern in the *Miller-Shugart* settlement context is that the agreed-upon judgment may be inflated because the policyholder lacks the financial incentive to drive a hard bargain, knowing that it faces no personal exposure for that amount.  See Indep. Sch. Dist. No. 197, 525 N.W.2d at 607.  That concern is not present here, however, because Davis-Frost did vigorously defend Gunderson's underlying claim, and the

which likely would have pushed Davis-Frost into bankruptcy. (Freeman Aff., Ex. A at 3.) And Gunderson sought satisfaction of the outstanding portion of the Judgment against Davis-Frost, but recognized Davis-Frost's precarious financial situation and that—excepting $175,000 in settlement payments—its recovery from Davis-Frost would come indirectly through any insurance coverage due from United National. Thus, Gunderson agreed not to hold Davis-Frost personally liable and to seek satisfaction of the outstanding portion of the Judgment only from United National.

> **B.**   **Paragraph 15 Of The Settlement Agreement Only Releases Davis-Frost From Personal Liability, Consistent With Minnesota Law Governing** *Miller-Shugart* **Agreements.**

United National's Motion is based solely on paragraph fifteen of the Settlement Agreement.[3] That paragraph states in full:

> **15.   Release of Gunderson's Claims Against Davis-Frost.**   For One ($1.00) and 00/100 Dollar and other good and valuable consideration, Gunderson hereby releases and forever discharges Davis-Frost from any and all past, present, and future claims, demands, obligations, damages, actions, causes of action or suits at law or in equity or any other claims of whatsoever kind or nature arising out of or relating in any way to Gunderson's claims in the Underlying Action, including, but not limited to the Judgment. This release covers known and unknown claims for unknown as well as known injuries and/or damages, claims for anticipated and unanticipated injuries and/or damages, claims for expected and unexpected consequences of injuries and/or damages, including, but not limited to, claims arising out of contract, tort, strict, liability, statutory violation, nuisance, indemnity, subrogation, contribution or any other

---

Judgment is the product of a jury verdict resulting from a hard-fought trial, as opposed to a stipulation.

[3] United National has agreed that its challenge to the Settlement Agreement is not based on reasonableness and is instead limited to the basis set forth in its Motion for Summary Judgment, as well as the proper calculation of the cost of replacement paint, for which Davis-Frost's $175,000 settlement payments are allocated pursuant to paragraph 3 of the Settlement Agreement. (Freeman Aff., Exs. E & F at 6:11-12:4.)

damages arising out of or in any way relating to claims that were or could
have been asserted by Gunderson in the Underlying Action.

The plain language of paragraph fifteen of the Settlement Agreement releases
Davis-Frost from personal liability relating to Gunderson's claims against Davis-Frost in
the underlying Oregon action. That is all paragraph fifteen does. Consistent with the
purposes of *Miller-Shugart*, paragraph fifteen is meant to ensure that Davis-Frost's
involvement in the dispute with both Gunderson and United National is at an end. And
this limited release of Davis-Frost's personal liability is perfectly consistent with
Minnesota *Miller-Shugart* law.

United National's summary judgment argument boils down to its contention that it
was improper for Gunderson to *release* Davis-Frost from personal liability, and instead a
covenant not to sue—and only a covenant not to sue—should have been used by the
parties. (UNIC's Br. at 8; Dkt. No. 125.) United National is wrong.

Minnesota case after Minnesota case describes the *Miller-Shugart* settlement
process as one where the underlying plaintiff (here, Gunderson) releases the policyholder
(here, Davis-Frost) from personal liability in relation to the underlying claims. In
describing what a *Miller-Shugart* settlement agreement is, Minnesota appellate courts
have repeatedly recognized that the policyholder agrees to the entry of Judgment "in
return for the plaintiffs *releasing the insured from any personal liability*." Peterson v.
Wilson Tp., 672 N.W.2d 556, 558 n.1 (Minn. 2003) (emphasis added); Buysse v.
Baumann-Furrie & Co., 481 N.W.2d 27, 29 (Minn. 1992) (stating that under the *Miller-Shugart* settlement process, the plaintiff "releas[es] the insured from any personal

liability"); <u>North Start Mut. Ins. Co. v. Midwest Family Mut. Ins. Co.</u>, 634 N.W.2d 216, 221 (Minn. Ct. App. 2001) (recognizing that in a *Miller-Shugart* agreement, the underlying plaintiffs "releas[e] the insured from any personal liability"); <u>Zurich Reinsurance Ltd. v. Canadian Pac. Ltd.</u>, 613 N.W.2d 760, 764 (Minn. Ct. App. 2000) (same); <u>Vang v. Vang</u>, 490 N.W.2d 647, 651 (Minn. Ct. App. 1992) (same).

Likewise, in applying Minnesota law, the Eighth Circuit Court of Appeals and this Court have explicitly recognized that a *Miller-Shugart* Agreement involves the *release* of the policyholder from personal liability. For example, in <u>Corn Plus Co-op v. Continental Casualty Company</u>, the Eighth Circuit recently observed that "[i]n a *Miller-Shugart* settlement . . . [t]he claimant *releases the insured from personal liability* and the claimant's recovery is limited to the amount obtained from the insurers." 516 F.3d 674, 677 n.2 (8th Cir. 2008) (emphasis added); <u>see Russell v. Burlington Ins. Co.</u>, No. 09-431, 2009 WL 2901205, at *2 n.3 (D. Minn., Sept. 3, 2009) (stating that the policyholder's "release[] . . . from any personal liability" is a component of a *Miller-Shugart* agreement); <u>Damsgard v. Liberty Mut. Ins. Co.</u>, No. 08-1416, 2009 WL 2424442, at *1 n.3 (D. Minn., Aug. 5, 2009) (same).[4]  This wealth of Minnesota authority identifying the

_____

[4] <u>See also</u> <u>Liberty Corp. Capital, Ltd. v. Phi Omega Chapter of Phi Sigma Kappa</u>, No. 06-4808, 2008 WL 3911259, at *3 n.4 (D. Minn., Aug. 19, 2008) (recognizing that under a *Miller-Shugart* agreement, the injured party "releas[es] the insured from any personal liability and agree[s] to seek coverage from the insurer"); <u>Stan Koch & Sons Trucking, Inc. v. Great West Cas. Co.</u>, No. 05-1225, 2006 WL 2331181, at *2 n.4 (D. Minn., Aug. 10, 2006) ("A *Miller-Shugart* agreement occurs when an insured . . . stipulates to a money judgment in favor of a plaintiff . . ., the plaintiff releases the insured from personal liability, and the plaintiff aggress to seek disputed liability coverage from the insurer."); <u>Allianz Ins. Co. of Canada v. Sanftleben</u>, No. 04-2644, 2005 WL 1529949, at *2 n.5 (D. Minn., June 29, 2005) ("A *Miller-Shugart* agreement occurs when . . . the plaintiff

release of the policyholder from personal liability as a part of a standard *Miller-Shugart*

agreement cannot be reconciled with United National's contention that paragraph fifteen

of the Settlement Agreement renders it invalid.[5]   At a very fundamental level, United

National's argument is based on an erroneous reading of Minnesota law.

Consistent with this Minnesota authority, many Minnesota courts, including the

Minnesota Supreme Court, have referred to a *Miller-Shugart* settlement agreement as a

"*Miller-Shugart* release," a characterization at odds with United National's suggestion

that a release from personal liability is somehow incompatible with the Miller-Shugart

settlement process.  See, e.g., Bob Useldinger & Sons, Inc. v. Hangsleben, 505 N.W.2d

323, 331 (Minn. 1993) ("When a *Miller-Shugart* release is challenged on reasonableness

grounds . . . ."); Alton M. Johnson Co. v. M.A.I. Co., 463 N.W.2d 277, 280 (Minn. 1990)

(discussing alternatives "that might be taken if a *Miller-Shugart* release is found to be

unreasonable"); see also Illinois Farmers Co. v. Anderson, No. A05-2400, 2006 WL

2348520, at *1 (Minn. Ct. App., Aug. 15, 2006) (stating that appellant sought recover

---

releases the insured from personal liability, and the plaintiff agrees to seek disputed
liability coverage from the insurer.").

[5] Consistent with this Minnesota authority, Minnesota court decisions confirm that in
practice, the *Miller-Shugart* settlement process is carried out by releasing the
policyholder from personal liability.  See, e.g., Gammon v. Auto-Owners Ins. Co., 454
N.W.2d 434, 435 (Minn. Ct. App. 1990) (stating that the policyholder entered into a
*Miller-Shugart* agreement and assigned all of her rights against the insurer "in exchange
for a release of any personal liability"); Edgley v. Lappe, 342 F.3d 884, 887 (8th Cir.
2003) (stating that in entering into a *Miller-Shugart* agreement, the policyholder agreed
to the entry of judgment and the claimant "released [the policyholder] from personal
liability").  In not one of the foregoing cases, was the parties' *Miller-Shugart* agreement
challenged on the basis asserted by United National, and in not one of the cases did the
reviewing Court suggest that the release of the policyholder from personal liability was
somehow improper under *Miller-Shugart* and its progeny.

"pursuant to a *Miller-Shugart* release agreement"); Wabegon, Inc. v. Brockopp, 1991 WL 210082, at *1 (Minn. Ct. App. 1991) (stating that the trial court approved a stipulated judgment "pursuant to a *Miller-Shugart* release); Corn Plus Co-op v. Cont'l Cas. Co., No. 04-4270, 2007 WL 107676, at *5 (D. Minn., Jan. 9, 2007) (quoting Bob Useldinger and referring to a *Miller-Shugart* settlement as a "*Miller-Shugart* release").

But not only does Minnesota authority affirmatively describe the *Miller-Shugart* settlement process as one where the policyholder is released from personal liability, United National does not cite to a single case stating that an element of a *Miller-Shugart* agreement is a covenant not to sue, as opposed to a personal release. And that is not surprising, because a covenant not to sue would not release the policyholder from personal liability consistent with the way that Minnesota law describes the *Miller-Shugart* process.[6] Indeed, only one Minnesota appellate decision uses the words "covenant not to sue" and "*Miller-Shugart*" in the same decision, (Freeman Aff., ¶ 7), and in that case, the *Miller-Shugart* settlement agreement not only included a covenant not to sue, but also a release. See The Rivers v. Richard Schwartz/Neil Weber, Inc., 459 N.W.2d 166, 169, 172 (Minn. Ct. App. 1990) (rejecting the validity of the *Miller-Shugart* agreement not due to the release but because the insurer was not given notice of the agreement, and because the agreement was negotiated after coverage was determined).

---

[6] Even if a covenant not to sue was required here, instead of a release, the Minnesota Supreme Court has emphatically rejected parties' "resort to artificial reasoning and mere technicalities" when "the true intentions of the parties to the agreement, whether it constitutes in form a covenant not to sue or a release, can be gathered from the four corners of the instrument." Gronquist v. Olson, 64 N.W.2d 159, 164 (Minn. 1954).

Moreover, United National cites no case that actually reaches the drastic result that it urges. Instead, United National resorts to loosely citing cases from Alabama, Texas, and Missouri that are not *Miller-Shugart* cases, far a field from the context of this case, and not supportive of United National's position. (UNIC's Br. at 6, Dkt. No. 125.)

United National also relies on the Minnesota Court of Appeals' decision in Hoffman v. Wiltscheck, 411 N.W.2d 923 (Minn. Ct. App. 1987), contending that it is "analogous" to this case. (UNIC's Br. at 11, Dkt. 125.) Hoffman, however, is not on point. Hoffman did not involve an insurance company or a situation where the injured party was seeking coverage from the liable party's insurer. Id. To the contrary, Hoffman involved multiple tortfeasors jointly and severally liable for common liability resulting from the accident victim's injuries. Id. Hoffman also did not involve a *Miller-Shugart* settlement. To the contrary, the settlement agreement at issue in Hoffman was a *Pierringer* settlement, (id. at 924), which is entirely different in nature, most commonly used by parties to contract around the common-law rule that the release of one tortfeasor released all other joint tortfeasors, ensuring that the plaintiff maintains her causes of action against the non-settling defendants. See Frey v. Snelgrove, 269 N.W.2d 918, 921 (Minn. 1978) (approving the use of *Pierringer* releases and discussing their nature). Because the context of Hoffman is diametrically opposed to the context of this case, it is merely a distraction.

And even if Hoffman were remotely relevant, it is easily distinguishable. In Hoffman, the released party had paid its fair share of liability—indeed, that is the whole

point of a *Pierringer* release,[7] and thus, the vicariously liable driver in fact could have no greater liability than the released party.  In marked contrast, here, there is a Judgment against Davis-Frost that remains in full force and effect, and under the express terms of the Settlement Agreement, Gunderson and Davis-Frost agreed that Davis-Frost will have only paid its fair share of liability once insurance recovery from United National, if any, is complete.  (Freeman Aff, Ex. A at ¶¶ 6, 8, 10, 12.)  If anything, Hoffman cuts against United National.

United National's general citations to the definitions of a judgment, release, and covenant not to sue, are similarly unhelpful.  For example, United National cites a non-*Miller-Shugart* case that states that "a general release . . . ordinarily discharges a plaintiff's entire cause of action."[8]    (UNIC's Br. at 8, Dkt. No. 125.)  But there is no textual basis in the Settlement Agreement itself for concluding that a "general release" was accomplished.  Paragraph 15 is not a general release, without limitation.  To the contrary, the entire Settlement Agreement imposes one clear limitation, establishing that Davis-Frost is not released from the Judgment insofar insurance coverage is directly recoverable from United National.  (See Freeman Aff., Ex. A ¶¶ 6, 8, 10, 12.)

---

[7] The cornerstone of a *Pierringer* release is that the settling tortfeasor pays, once and for all, its fair share of liability to the accident victim.  See Bunce v. A.P.I., Inc., 696 N.W.2d 852, 857 (Minn. Ct. App. 2005) ("In accordance with this *Pierringer* release and the applicable caselaw analyzing *Pierringer* releases, respondent paid only its fair share of common liability.").

[8] In fact, in the very case cited by United National, Bixler by Bixler v. J.C. Penney Co., Inc., 376 N.W.2d 209, 215 (Minn. 1985), the Court held that the release at issue was *not* a general release because in that context, the language of the settlement agreement—read as a whole—preserved certain claims.  The clear point of Bixler then is that the terms of the Settlement Agreement are what control the scope of the release.

At bottom, the point of *every Miller-Shugart* agreement is to personally release the exposed policyholder from the personal liability it faces, with the understanding that the liability of the policyholder will be satisfied from available insurance coverage, if any. Thus, the policyholder remains liable, but not personally so. Indeed, as a result of *every Miller-Shugart* agreement, the policyholder is no longer personally liable for the Judgment, and every *Miller-Shugart* agreement would be invalid if United National's position were correct. Since the *Miller-Shugart* decision was handed down in 1982, Minnesota Courts have continually held that the assignee of the policyholder's insurance claim may seek to satisfy the policyholder's liability in a direct action against the liability insurer, even though the policyholder faces no personal exposure as a result of the settlement.

Paragraph fifteen of the Settlement Agreement is consistent with Minnesota law. If granted, United National's Motion would upset almost 30 years of established *Miller-Shugart* precedent. It should therefore be rejected.

### C.    The Settlement Agreement Does Not Release The Judgment.

Reading paragraph fifteen of the Settlement Agreement in isolation, United National contends in its Memorandum of Law that the Settlement Agreement released the Judgment, and insinuates more than once that the Judgment has been entirely satisfied and made void. (UNIC's Br. at 5-6, Dkt. No. 125.) But the plain language of the Settlement Agreement absolutely refutes that contention. The Judgment has **not** been released, satisfied, or made void.

The terms of the Settlement Agreement, particularly when read as a whole, establish its consistency with *Miller-Shugart*. First, nowhere does the text of paragraph fifteen say that Gunderson's Judgment against Davis-Frost has been released. Likewise, several different paragraphs of the Settlement Agreement make clear that the Judgment against Davis-Frost remains in full force and effect, to be collected from any insurance proceeds owed by United National. (Freeman Aff., Ex. A at ¶¶ 1, 2, 6-8, 10-14.) Davis-Frost remains liable on the Judgment, but not personally so, and only for the amount collectible from United National, if any.

        1.       <u>Settlement Agreement Recitals</u>:

To start, the Recitals of the Settlement Agreement, which are expressly incorporated throughout the Agreement, track the components of a *Miller-Shugart* Agreement and demonstrate the parties' intent in entering into the Settlement Agreement. In relevant part, they state:

> WHEREAS, Davis-Frost recognizes that as a result of the jury's verdict, entry of the corresponding Judgment, and the nature of its appeal, there is a substantial risk that Davis-Frost will be required to pay the balance of the Judgment, with interest; and

> WHEREAS, Davis-Frost has disclosed to United National its financial condition, and informed United National that if the Judgment is affirmed, and Gunderson pursues collection of the Judgment, Davis-Frost would very likely be forced to seek bankruptcy protection; and

>            * * *

> WHEREAS, Gunderson is willing to accept from Davis-Frost the sum of One Hundred and Seventy Five Thousand and 00/100 ($175,000.00) and Gunderson is *willing to seek payment of the remaining balance of the Judgment owed to Gunderson solely from Davis-Frost's liability insurer, United National, and not from Davis-Frost personally*; and

WHEREAS, after careful review, Gunderson has determined that the *remaining portion of the Judgment that it intends to seek solely from United National* is attributable to property damage to the railcars resulting from the failure of Davis-Frost's paint.

(Freeman Aff., Ex. A at pg. 4, ¶ 1.)  Under United National's interpretation of the Settlement Agreement, these clearly expressed purposes of the Settlement Agreement would be entirely frustrated.

2.    Assignment Of Davis-Frost's Insurance Rights And Claims & Further Prosecution Of Those Claims:

Consistent with the parties' Recitals, the Settlement Agreement provisions discussing further prosecution of the Minnesota Action make clear that the Judgment against Davis-Frost remains in full force and effect insofar as the outstanding portion is collectible from United National.  Paragraph six of the Agreement, under which Davis-Frost assigns its insurance rights and claims to Gunderson, states that "Gunderson shall proceed in its own name in the Minnesota action, and as assignee of the rights of Davis-Frost . . . *to seek satisfaction of the unsatisfied portion of the Judgment* . . . ."  (Id., ¶ 6.)

Likewise, the Agreement states that Davis-Frost agrees to reasonably cooperate "to allow Gunderson to effectively pursue Davis-Frost's insurance rights in the Minnesota action" (id., ¶ 7), and that United National makes no warranty that Gunderson will successfully recover from United National.  (Id., ¶ 13.)  United National's assertion that Davis-Frost and Gunderson agreed to release the Judgment in its entirety is irreconcilable with these provisions' explicit discussion of Gunderson's *future* prosecution of this coverage action against United National in attempt to completely satisfy the Judgment.  Indeed, these settlement provisions, like many others, would have

no meaning or effect whatsoever if United National's argument were correct, a result clearly inconsistent with Minnesota law.  See Stiglich, 621 N.W.2d at 803; Outboard Marine, 415 N.W.2d at 723.  United National concedes so much by calling these provisions and others superfluous.  (UNIC's Br. at 11, Dkt. No. 125.)

> 3.    Post-Judgment Remedies And Gunderson's Collection Rights On The Judgment:

Paragraph eight, which governs Gunderson's post-Judgment remedies, also clearly establishes the parties' intention to keep the Judgment in full force and effect for satisfaction through any recovery collected from United National:

> It is the express intention of the parties hereto . . . that Gunderson shall have no right to, and shall not at any time, execute on, and shall make no efforts to execute on the Judgment from the assets of Davis-Frost, *except that the Judgment may be enforced against United National to the extent of available insurance coverage for the claims asserted by Gunderson against Davis-Frost in the Underlying Action.* . . .  If called upon by Davis-Frost, Gunderson will cause to be delivered a release or quit claim deed or other appropriate documents releasing any claim to or lien upon the property or assets of Davis-Frost, as Judgment debtors affected by the judgment, *with the sole exception of liability which may be found to attach to the United National Policies.*  Subject to the terms and conditions of this Settlement Agreement, Gunderson expressly preserves its claims against United National.

(Id., ¶ 8 (emphasis added).)  Paragraph eight clearly provides that Gunderson will not deliver a quit-claim deed, release, or any other similar document releasing the Judgment against Davis-Frost for liability in the amount measured by the insurance coverage due to Davis-Frost from United National.  The clear exceptions in this paragraph would be meaningless if United National's position were correct.

Similarly, the Settlement Agreement provision governing Gunderson's rights of collection makes clear that the Judgment is not released.  To the contrary, paragraph ten states that Gunderson's "sole and exclusive right and remedy to collect the Judgment" is "governed by this Settlement Agreement" and further that Gunderson's "collection on the Judgment, in addition to the [$175,000 in settlement payments], shall come *only* through any recovery . . . against United National."  (Id., ¶ 10.)

### 4.   Future Satisfaction Of The Judgment After Conclusion Of The Minnesota Action:

Consistent with its contention that the Judgment has been completely released, United National asserts that as a result of the Settlement Agreement, the Judgment has been entirely satisfied.  (UNIC's Br. at 5-6, Dkt. No. 125.)  That position, however, is in complete contravention of Davis-Frost and Gunderson's agreement as to the future satisfaction of the Judgment.  Paragraph twelve, entitled "Satisfaction of the Judgment," provides:

> Gunderson shall promptly file with the court in the Underlying Action a full and complete satisfaction of the Judgment *after resolution by judgment, settlement or otherwise of the Minnesota Action against United National*. The satisfaction so filed shall be a full and complete satisfaction of judgment regardless of whether any recovery is made by Gunderson on the claim or action against United National . . . .  *Pending resolution of the Minnesota Action as described above in this paragraph 12, the parties agree that the Judgment shall remain in full force and effect*, subject to any partial payments previously made by Travelers, AIG or Davis-Frost.

(Id., ¶ 12 (emphasis added).)   Consistent with paragraph twelve, the Settlement Agreement also states that Davis-Frost shall pay Gunderson $175,000 "*toward satisfaction* of the outstanding Judgment."  (Id., ¶ 2 (emphasis added).)  The Agreement

clearly does not say that the $175,000 payment is in satisfaction of the Judgment. Again, United National can make no sense of these paragraphs under its reading of the contract. A Judgment is either entirely satisfied or it's not, and if it has been satisfied (as United National asserts), then there is no reason that both contracting parties would provide for the future satisfaction of the Judgment following the conclusion of this insurance-coverage case.

Based on all of these contractual provisions, United National's assertion that the Judgment has been released and satisfied cannot be accepted. The parties' intent is abundantly clear based on the plain language of the Settlement Agreement, read as a whole. Gunderson released Davis-Frost from personal liability, and Davis-Frost and Gunderson agreed that the Judgment remains in full force and effect to be enforced and satisfied against Davis-Frost insofar as United National owes Davis-Frost insurance proceeds under the United National insurance policies.

### D.    At A Minimum, The Intent Of The Settlement Agreement Is Ambiguous, Which Precludes Summary Judgment For United National.

At a bare minimum, the intent of the Settlement Agreement is ambiguous, and therefore the contracting parties' intent would be a fact question, precluding summary judgment for United National.

## VII.  <u>CONCLUSION</u>

United National's Motion should be denied because United National's reading of the Settlement Agreement is inconsistent with the plain text of the Agreement, Minnesota *Miller-Shugart* law, and basic principles of contract interpretation. The plain language

of the Settlement Agreement demonstrates that the parties' intent was only to release Davis-Frost from personal liability related to the Underlying Action, a result consistent with long-standing Minnesota caselaw describing the release of the policyholder from personal liability as a basic part of the *Miller-Shugart* settlement process.  Here, the Judgment is not released, is not void, and has not been satisfied.  United National's argument to the contrary makes a mockery of over half of the Settlement Agreement's provisions and disregards cardinal rules of contract interpretation.  The Court should reject United National's attempt to misread one isolated paragraph in derogation of the entire agreement and deny its Motion for Summary Judgment.

Dated:  February 22, 2010

**LINDQUIST & VENNUM P.L.L.P.**

By   s/Bryan R. Freeman
     Thomas C. Mielenhausen (Reg. # 160325)
     tmielenhausen@lindquist.com
     Bryan R. Freeman (Reg. # 0387154)
     bfreeman@lindquist.com

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 371-3211
(612) 371-3207 (facsimile)

and

Michael R. Seidl
Seidl Law Office
888 SW Fifth Avenue, Suite 300
Portland, OR  97204
(503) 224-7840

**ATTORNEYS FOR DEFENDANT GUNDERSON, INC.**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED NATIONAL INSURANCE
COMPANY, a Pennsylvania Insurance
Company,

                    Plaintiff,

        v.

GUNDERSON, INC., an Oregon
Corporation; and DAVIS-FROST, INC., a
Minnesota Corporation,

                    Defendants.

Court File No. 08-CV-678 MJD/JJK

## CERTIFICATE OF COMPLIANCE
## WITH LR7.1(c)

        THE UNDERSIGNED COUNSEL FOR Gunderson, Inc., hereby certifies

that the memorandum of law filed in opposition to United National's second Motion for

Summary Judgment complies with the length and type size limitations of LR 7.1.  Said

memorandum was prepared using the 2003 version of the Microsoft Word processing

program.  According to the "Word Count" function of that program, the number of words

in the subject memorandum of law is 6,138.

Dated:   February 22, 2010          **LINDQUIST & VENNUM P.L.L.P.**

By   _s/Bryan R. Freeman_____
    Thomas C. Mielenhausen (Reg. # 160325)
    tmielenhausen@lindquist.com
    Bryan R. Freeman (Reg. # 0387154)
    bfreeman@lindquist.com

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 371-3211
(612) 371-3207 (facsimile)

and

Michael R. Seidl
Seidl Law Office
888 SW Fifth Avenue, Suite 300
Portland, OR  97204
(503) 224-7840

**ATTORNEYS FOR DEFENDANT
GUNDERSON, INC.**