UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED NATIONAL
INSURANCE COMPANY, a
Pennsylvania Insurance Company,

      Plaintiff,

v.

GUNDERSON, INC., an Oregon
Corporation; DAVIS-FROST, INC.,
a Minnesota Corporation,

      Defendants.

**Memorandum of Law & Order**
Civil File No. 08-0678 (MJD/JJK)

Aaron M. Simon and Rolf E. Sonneysn, Tomsche, Sonnesyn & Tomsche, PA, Counsel for Plaintiff.

Bryan R. Freeman, Jacob A. Schunk, Thomas C. Mielenhausen, Lindquist & Vennum PLLP, Counsel for Defendant Gunderson, Inc.

Joy Reopelle Anderson and Rick E. Kubler, Gray Plant Mooty Mooty & Bennett, PA, Counsel for Defendant Davis-Frost, Inc.

## I.    INTRODUCTION

This matter comes before the Court on Gunderson, Inc.'s Motion to

Dismiss Davis-Frost, Inc. [Docket No. 109] and United National Insurance

Company's ("United National") second Motion for Summary Judgment [Docket

No. 124]. The Court heard oral argument on Friday, May 7, 2010, and now grants Gunderson's Motion to Dismiss and denies United National's second Motion for Summary Judgment.

## II.  BACKGROUND

This dispute arises out of damage to railcars manufactured and sold by Gunderson between August 2000 and February 2001. Gunderson painted these railcars with Davis-Frost paint, and sold them to its customers. After the railcars were placed into service around the country, the paint started to blister, bubble, and crack. Gunderson settled the claims of its customers for $1.3 million and sued Davis-Frost for damages in the United States District Court for the District of Oregon (the "Underlying Action"). The Underlying Action proceeded to trial where Gunderson obtained a $1.3 million verdict and obtained a $1,321,274.09 Judgment against Davis-Frost (the "Judgment").

During the relevant time periods, Davis-Frost was insured by three different liability insurers. For the two annual policy periods between July 29, 2000 and July 29, 2002, United National insured Davis-Frost under commercial general and commercial umbrella policies. Travelers Indemnity Company ("Travelers") insured Davis-Frost between July 29, 2002, and July 29, 2003, and

American International Specialty Lines Insurance Company ("AISLIC") insured Davis-Frost between July 29, 2003 and July 29, 2005.

Shortly after entry of the Judgment, United National sued Davis-Frost, Travelers Insurance and AISLIC before this Court, seeking a declaration that United National's policies do not cover any part of the Judgment. United National also sued Gunderson, alleging that a controversy existed between the parties. On August 13, 2008, Travelers and AIG were dismissed from the action [Docket No. 33]. United National then filed a Motion for Summary Judgment [Docket No. 66], seeking judgment as a matter of law based on several coverage defenses. The Court denied the motion after concluding that genuine issues of material fact precluded summary judgment [Docket No. 99].

After the parties were unable to reach an agreement at a September 4, 2009 global Settlement Conference [Docket No. 100], Gunderson and Davis-Frost began to discuss a potential settlement of their dispute. Davis-Frost advised Gunderson that it would likely be forced to seek bankruptcy protection if it had to pay the full amount of the Judgment. On December 3, 2009, Davis-Frost notified United National that it intended to enter into the Settlement Agreement with Gunderson if the Judgment in the Underlying Action was affirmed on appeal. United National did not respond. On December 10, 2009, despite no

3

appellate decision, Davis-Frost entered into the Settlement Agreement with Gunderson.

Paragraph 14 of the Settlement Agreement stated that the Agreement was intended to have the same effect and was to be interpreted in accordance with Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982) and its progeny.  (Id. ¶ 14.)  As a result, the agreement maintained that beyond $175,000 in settlement payments, Gunderson would only seek to satisfy the outstanding portion of the Judgment from any insurance proceeds due to Davis-Frost from United National.  The Settlement Agreement, however, also contained the following provision:

> 15. **Release of Gunderson's Claims Against Davis-Frost.**  For One ($1.00) and 00/100 Dollar and other good and valuable consideration, Gunderson hereby releases and forever discharges Davis-Frost of and from any and all past, present, and future claims, demands, obligations, damages, actions, causes of action or suits at law or in equity or any other claims of whatsoever kind or nature arising out of or relating in any way to Gunderson's claims in the Underlying Action, including, but not limited to, the Judgment. This release covers known and unknown claims for unknown as well as known injuries and/or damages, claims for anticipated and unanticipated injuries and/or damages, claims for expected and unexpected consequences of injuries and/or damages, including, but not limited to, claims arising out of contract, tort, strict liability, statutory violation, nuisance, indemnity, subrogation, contribution or any other damages arising out of or in any way relating to claims that were or could have been asserted by Gunderson in the Underlying Action.

4

(Freeman Aff. Ex. A ¶ 15.) The meaning of this provision provides the basis for United National's second Motion for Summary Judgment.

## III. DISCUSSION

### A. United National's Second Motion for Summary Judgment

United National contends that paragraph fifteen of the Settlement Agreement discharges the Judgment against Davis-Frost in the Underlying Action. As a result, United National asserts that it no longer has a duty to indemnify Davis-Frost and that it has no further obligation to either Davis-Frost or Gunderson concerning the Judgment.

#### 1. Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Factual disputes that are irrelevant or unnecessary will not be counted. (Id.) The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the non-moving party. Graves v. Ark. Dep't. of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000). "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### 2. Miller-Shugart Settlement Agreements.

Under Minnesota's Miller-Shugart doctrine, "[w]hen an insurer has denied that its policy affords any coverage for a claim brought against its insured, the insured may agree to have judgment entered against it on condition the judgment is collectible only from available insurance." Indep. Sch. Dist. No. 197 v. Accident & Cas. Ins. of Winterthur, 525 N.W.2d 600, 606-07 (Minn. Ct. App. 1995) (citing Miller v. Shugart, 316 N.W.2d at 734). "Such a judgment is binding on the insurer if: (1) the judgment was obtained without fraud or collusion; and (2) the settlement on which the judgment is based was reasonable and prudent."

6

Id. The Minnesota Supreme Court has approved the Miller-Shugart settlement process, "whereby an insured stipulates to a money judgment in favor of a plaintiff, the plaintiff releases the insured from personal liability, and the plaintiff agrees to seek coverage from the insurer." Burbach v. Armstrong Rigging & Erecting, Inc., 560 N.W.2d 107, 109 (Minn. Ct. App. 1997). As the Minnesota Supreme Court observed in Miller v. Shugart:

> [The insureds] . . . have a right to protect themselves against plaintiff's claim. . . . If, as here, the insureds are offered a settlement that effectively relieves them of any personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in their best interest to accept the offer. Nor, do we think, can the insurer who is disputing coverage compel the insured to forego a settlement which is in their best interests.

316 N.W.2d at 733-34.

United National claims that a Miller-Shugart agreement must contain a covenant by a plaintiff not to execute on the judgment against the insured. Moreover, it argues that a Miller-Shugart agreement cannot substitute a personal release from liability in place of a covenant not to execute. United National has not, however, provided any case law stating that an element of a Miller-Shugart agreement is a covenant not to execute, rather than a personal release.

The Court disagrees with United National's position and concludes that a release of the insured's personal liability is consistent with Minnesota Miller-

7

Shugart law. In describing what a Miller-Shugart settlement agreement is, Minnesota appellate courts have indeed recognized that the policyholder agrees to the entry of Judgment "in return for the plaintiffs *releasing* the insured from any personal liability." Peterson v. Wilson Tp., 672 N.W.2d 557, 558 n.1 (Minn. 2003) (emphasis added); see also Buysse v. Baumann-Furrie & Co., 481 N.W.2d 27, 29 (Minn. 1992) (stating that under the Miller-Shugart settlement process, the plaintiff "releas[es] the insured from any personal liability"); North Star Mut. Ins. Co. v. Midwest Family Mut. Ins. Co., 634 N.W.2d 216, 221 (Minn. Ct. App. 2001) (recognizing that in a Miller-Shugart agreement, the underlying plaintiffs "releas[e] the insured from any personal liability"); Zurich Reinsurance Ltd. v. Canadian Pac. Ltd., 613 N.W.2d 760, 764 (Minn. Ct. App. 2000) (same); Vang v. Vang, 490 N.W.2d 647, 651 (Minn. Ct. App. 1992) (same). Likewise, the Eighth Circuit Court of Appeals and the District of Minnesota have recognized that a Miller-Shugart agreement involves the release of the policy holder from personal liability. Corn Plus Co-op v. Cont'l Cas. Co., 516 F.3d 674, 677 n.2 (8th Cir. 2008) ("In a Miller-Shugart settlement . . . [t]he claimant releases the insured from personal liability and the claimant's recovery is limited to the amount obtained from the insurers."); see Russell v. Burlington Ins. Co., No. 09-431 (RHK/JJK), 2009 WL 2901205, at *2 n.3 (D. Minn. Sept. 3, 2009) (stating that the policyholder's

"release[e] . . . from any personal liability" is a component of a Miller-Shugart agreement); Damsgard v. Liberty Mut. Ins. Co., No. 08-1416 (RHK/AJB), 2009 WL 2424442, at *1 n.3 (D. Minn., Aug. 5, 2009) (same). Finally, the Minnesota Supreme Court has even referred to a Miller-Shugart settlement as a "Miller-Shugart release." See e.g., Bob Useldinger & Sons, Inc. v. Hangsleben, 505 N.W.2d 323, 331 (Minn. 1993); Alton M. Johnson Co. v. M.A.I. Co., 463 N.W.2d 277, 280 (Minn. 1990).

With this framework in place, the Court now considers United National's argument that Gunderson and Davis-Frost failed to properly enter into a Miller-Shugart settlement agreement.

### 3. Whether Gunderson & Davis-Frost entered into a Miller Shugart Settlement Agreement.

United National insists that the Settlement Agreement is not a bona fide Miller-Shugart agreement because paragraph fifteen released the Judgment in the Underlying Action. As a result, United National claims that its duty to indemnify Davis-Frost is excused because there is nothing left to indemnify. Moreover, United National contends that the Settlement Agreement extinguished any assignment to Gunderson to pursue Davis-Frost's rights of indemnification against United National.

The Court disagrees and concludes that the clear language of paragraph fifteen states that Gunderson released Davis-Frost from personal liability and did not discharge the Judgment in the Underlying Action. Moreover, several different paragraphs of the Settlement Agreement indicate that the Judgment remains in full force and effect, to be collected from any insurance proceeds owed by United National. For instance, the Recitals track the components of a Miller-Shugart agreement and demonstrate the parties' intent in entering into the Settlement Agreement. In relevant part they state:

> WHEREAS, Gunderson is willing to accept from Davis-Frost the sum of One Hundred and Seventy Five Thousand and 00/100 ($175,000.00) and Gunderson is willing to seek payment of the remaining balance of the Judgment owed to Gunderson solely from Davis-Frost's liability insurer, United National, and not from Davis-Frost personally; and
>
> WHEREAS, after careful review, Gunderson has determined that the remaining portion of the Judgment that it intends to seek solely from United National is attributable to property damage to the railcars resulting from the failure of Davis-Frost's paint.

(Freeman Aff. Ex. A.) Similarly, paragraph six of the Settlement Agreement states that "Gunderson shall proceed in its own name in the Minnesota action, and as assignee of the rights of Davis-Frost . . . to seek satisfaction of the unsatisfied portion of the Judgment." (Id. ¶ 6.) Likewise, the Agreement states that Davis-Frost agrees to reasonably cooperate "to allow Gunderson to

effectively pursue Davis-Frost's insurance rights in the Minnesota action," and that Davis-Frost makes no warranty that Gunderson will successfully recover from United National. (Id. ¶¶ 7, 13.)

Paragraph eight, which governs Gunderson's post-Judgment remedies states as follows:

> It is the express intention of the parties hereto . . . that Gunderson shall have no right to, and shall not at any time, execute on, and shall make no efforts to execute on the Judgment from the assets of Davis-Frost, except that the Judgment may be enforced against United National to the extent of available insurance coverage for the claims asserted by Gunderson against Davis-Frost in the Underlying Action. . . . If called upon by Davis-Frost, Gunderson will cause to be delivered a release or quit claim deed or other appropriate documents releasing any claim to or lien upon the property or assets of Davis Frost, as Judgment debtors affected by the Judgment, with the sole exception of liability which may be found to attach to the Untied National Policies. Subject to the terms and conditions of this Settlement Agreement, Gunderson expressly preserves its claims against United National.

(Id. ¶ 8.) Furthermore, paragraph ten states that Gunderson's "sole and exclusive right and remedy to collect the Judgment entered in the Underlying Action shall be governed by this Settlement Agreement" and further that Gunderson's "collection on the Judgment, in addition to the [$175,000 in settlement payments], shall come only through any recovery made by Gunderson, as assignee, against United National." (Id. ¶ 10.)

Finally, paragraph twelve, entitled "Satisfaction of the Judgment," provides:

> Gunderson shall promptly file with the court in the Underlying Action a full and complete satisfaction of the Judgment after resolution by judgment, settlement or otherwise of the Minnesota Action against United National. The satisfaction so filed shall be a full and complete satisfaction of judgment regardless of whether any recovery is made by Gunderson on the claim or action against United National . . . Pending resolution of the Minnesota Action as described in this paragraph 12, the parties agree that the Judgment shall remain in full force and effect, subject to any partial payments previously made by Travelers, AIG or Davis-Frost.

(Id. ¶ 12.) Consistent with this paragraph, the Agreement also states that Davis-Frost shall pay Gunderson $175,000 "toward satisfaction of the outstanding Judgment." (Id. ¶ 2.)

The Court concludes that United National's position is irreconcilable with these contractual provisions. A settlement agreement is a contract like any other. In re Welfare of M.R.H., 716 N.W.2d 349, 352 (Minn. Ct. App. 2006); Beach v. Anderson, 417 N.W.2d 709, 711-12 (Minn. Ct. App. 1988). "The cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Art Goebel, Inc. v. N. Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997). It is an accepted rule in Minnesota that courts "give effect to all of a contract's terms."

12

Metro. Airports Comm'n v. Noble, 763 N.W.2d 639, 645 (Minn. 2009). A reviewing court must "construe a contract as a whole so as to harmonize all provisions, if possible, and to avoid a construction that would render one or more provisions meaningless." Stiglich Constr., Inc. v. Larson, 621 N.W.2d 801, 803 (Minn. Ct. App. 2001) (citation omitted). The process of interpreting the contracting parties' intent is not determined "by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which words and phrases are given a meaning in accordance with the obvious purpose of the . . . contract as a whole." Davis by Davis v. Outboard Marine Corp., 415 N.W.2d 719, 723 (Minn. Ct. App. 1987) (citation omitted). Finally, Minnesota courts have a longstanding policy of construing contracts in a manner that avoids unjust results. RAM Mut. Ins. Co. v. Meyer, 768 N.W.2d 399, 406 (Minn. Ct. App. 2009).

Pursuant to this guidance, the most appropriate reading of the Settlement Agreement is that paragraph fifteen merely released Davis-Frost from personal liability. Adopting United National's construction would render the majority of the provisions in this contract unnecessary and obsolete. The Court therefore determines that the Settlement Agreement, read as a whole, is consistent with

13

Miller-Shugart. For this reason, the Court denies United National's second Motion for Summary Judgment.

## B. Motion to Dismiss Davis-Frost and Substitute Gunderson

The parties have stipulated to the dismissal of Defendant Davis-Frost without prejudice. The Court understands that Gunderson and Davis-Frost have entered into an agreement whereby Gunderson assumes the position and liabilities of Davis-Frost. The Court also recognizes that United National wishes to protect its claims against Davis-Frost for insurance deductibles and for partial reimbursement of attorney's fees from the Underlying Action. The Court therefore accepts the parties' stipulation and dismisses Davis-Frost without prejudice. The Court reserves judgment on all evidentiary issues until after it receives further briefing from the parties during the pretrial phase of this case.

## IV. CONCLUSION & ORDER

The Court concludes that Gunderson and Davis-Frost properly entered into a Miller-Shugart settlement agreement. Accordingly, based on the foregoing, all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that

> 1. Plaintiff's Motion for Summary Judgment [Docket No. 124] is **DENIED.**

2. Defendant Gunderson's Motion to Dismiss [Docket No. 109] is **GRANTED** and Defendant Davis-Frost is **DISMISSED WITHOUT PREJUDICE** from this action.

Date:  May 12, 2010               s/ Michael J. Davis
                                                         Chief Judge Michael J. Davis
                                                         United States District Court